1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VENABLE LLP**
Witt W. Chang (SBN 281721)
   wwchang@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:   (310) 229-9900
Facsimile:    (310) 229-9901

Sean M. McCarthy (*Admitted Pro Hac Vice*)
   smccarthy@venable.com
1290 Avenue of the Americas, Floor 20
New York, New York 10104
Telephone: (212) 218-2332
Facsimile: (212) 218-2200

Attorneys for Plaintiff and Counter-Defendant BELLA SUMMIT LLC; and Third-Party Defendants JEFF DAGAN and KYLE DAGAN

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| BELLA SUMMIT LLC, a California limited liability company,<br><br>                                  Plaintiff,<br><br>    vs.<br><br>GAMEBREAKER, INC., a California corporation,<br><br>                                  Defendant. | Case No. 2:21-cv-06007 JAK(MARx)<br><br>Assigned to: Hon. John A. Kronstadt<br><br>**PLAINTIFF BELLA SUMMIT LLC'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>*Markman* Hearing<br>Date:   May 2, 2022<br>Time:   No Time Set<br>Place:   350 West 1st Street<br>            Los Angeles, CA 90012<br>            Courtroom 10B |

GAMEBREAKER, INC., a California corporation,

                Counter-Claimant,

    vs.

BELLA SUMMIT LLC, a California limited liability company,

                Counter-Defendant.

---

GAMEBREAKER, INC., a California corporation,

                Third-Party Plaintiff,

    vs.

JEFF DAGAN, an individual; and KYLE DAGAN, an individual,

                Third-Party Defendants.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................. 1

II.  LEGAL STANDARDS ......................................................................... 1

III.  THE ASSERTED PATENT .................................................................. 2

IV.  DISPUTED CLAIM TERMS ............................................................... 4

    A.  TERM 1: "PADDED HELMET" (CLAIMS 1, 4-7, 10, AND 12-15) ................ 4

    B.  TERMS 2 AND 3: "A THIRD LAYER, WHEREIN SAID SECOND LAYER IS INTERPOSED BETWEEN SAID FIRST AND SECOND LAYER, WHEREIN SAID SECOND LAYER HAS A HIGHER DENSITY THAN ONE OF SAID FIRST OR THIRD LAYER" AND "SAID SECOND LAYER IS INTERPOSED BETWEEN SAID FIRST AND SECOND LAYER" (CLAIM 1) ........................... 5

    C.  TERM 4: "SOFT" (CLAIMS 1 AND 12) ....................................................... 8

    D.  TERM 5: "A ... SHELL COVERING EXTERIOR AND INTERIOR SURFACES" (CLAIM 1) AND "A ... SHELL ... SAID ... SHELL COVERS EXTERIOR AND INTERIOR SURFACES" (CLAIM 12) ........................................................ 11

    E.  TERM 6: "A SEAM" (CLAIMS 6 AND 12) .................................................. 12

    F.  TERM 7: "HEAT TREATED" (CLAIM 13) .................................................. 14

V.  CONCLUSION ...................................................................................... 15

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BASF Corp. v. Johnson Matthey Inc.*,
  875 F.3d 1360 (Fed. Cir. 2017) ...................................................................5

*CBT Flint Partners, LLC v. Return Path, Inc.*,
  654 F.3d 1353 (Fed. Cir. 2011) ...................................................................8

*Cordis Corp. v. Boston Scientific Corp.*,
  561 F.3d 1319 (Fed. Cir. 2009) ...................................................................5

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...................................................................5

*Dow Chem. Co. v. Nova Chems. Corp.*,
  809 F.3d 1223 (Fed. Cir. 2015) ...................................................................5

*Epistar Corp. v. Int'l Trade Comm'n*,
  566 F.3d 1321 (Fed. Cir. 2009) ...................................................................7

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
  381 F.3d 1352 (Fed. Cir. 2004) ...................................................................4

*Interactive Tracking Sys., Inc. v. Artafact LLC*,
  No. CIV.A. 08-10101-EFH, 2011 WL 2161863
  (D. Mass. June 1, 2011) ...............................................................................9

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  347 F.3d 1367 (Fed. Cir. 2003) ...................................................................5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) ...............................................................................5, 12

*Pavo Sols., LLC v. Kingston Tech. Co., Inc.*,
  No. SACV141352JLSKES, 2018 WL 5099486
  (C.D. Cal. Sept. 10, 2018) .........................................................................10

*Philipps v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...............................................4, 5

*Pulse Eng'g, Inc. v. Mascon, Inc.*,
  No. 08CV0595JM AJB, 2009 WL 755321 (S.D. Cal. Mar. 9, 2009) ...............10

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

*Thorner v. Sony Computer Entm't Am. LLC,*
  669 F.3d 1362 (Fed. Cir. 2012) .................................................................. 4, 13

*Whittaker Corp. by Technibilt Div. v. UNR Indus., Inc.,*
  911 F.2d 709 (Fed. Cir. 1990) ........................................................................ 10

**Statutes**

35 U.S.C. § 112(b) ............................................................................................ 5

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## I.   __INTRODUCTION__

2  In this lawsuit, Bella Summit LLC ("Bella Summit") accuses Gamebreaker,

3  Inc. ("Gamebreaker") of infringing claims 1, 4-7, 10, and 12-15 of U.S. Patent No.

4  9,775,394 ("the '394 patent").  The asserted claims are written in plain English,

5  non-technical words that everyone can readily understand.  Nevertheless,

6  Gamebreaker asks this Court to construe seven claim terms, in most cases looking

7  to change the patentee's chosen word choices to words of its choosing without

8  justification, and in the other cases seeking a finding of indefiniteness for terms

9  that are well-understood.  Bella Summit, on the other hand, asks this Court to

10  construe only one term to fix a clear and obvious typographical error where the

11  correction is not subject to any reasonable debate.

12  For the reasons discussed herein, Bella Summit respectfully requests the

13  Court to reject Gamebreaker's proposed constructions and indefiniteness

14  arguments in favor of the disputed terms' plain and ordinary meanings, and

15  construe the remaining term to correct the obvious typographical error.

16

## II.   __LEGAL STANDARDS__

17  "[T]he person of ordinary skill in the art is deemed to read [a] claim term not

18  only in the context of the particular claim in which the disputed term appears, but

19  in the context of the entire patent, including the specification."  *Philipps v. AWH*

20  *Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  Claims are generally given

21  their plain meaning as understood by a person of ordinary skill in the art when read

22  in the context of the specification and prosecution history.  *E.g.*, *Thorner v. Sony*

23  *Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  "In some cases,

24  the ordinary meaning of claim language as understood by a person of skill in the

25  art may be readily apparent even to lay judges, and claim construction in such

26  cases involves little more than the application of the widely accepted meaning of

27  commonly understood words."  *Philipps*, 415 F.3d at 1314.  "Absent a clear

28  disavowal or contrary definition in the specification or the prosecution history, the

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

1   patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc.*

2   *v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004).

3         Claim construction "begins and ends" with the words of the claims. *See*

4   *Renishaw PLC v. Marposs Scoieta' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir.

5   1998). "Quite apart from the written description and the prosecution history, the

6   claims themselves provide substantial guidance as to the meaning of particular

7   claim terms." *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in

8   the asserted claim can be highly instructive." *Id.* But the "claims must be

9   construed so as to be consistent with the specification, of which they are a part."

10  *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003).

11        A patent must conclude "with one or more claims particularly pointing out

12  and distinctly claiming the subject matter which the inventor or a joint inventor

13  regards as the invention." 35 U.S.C. § 112(b). "[A] patent is invalid for

14  indefiniteness if its claims, read in light of the specification delineating the patent,

15  and the prosecution history, fail to inform, with reasonable certainty, those skilled

16  in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments,*

17  *Inc.*, 572 U.S. 898, 901 (2014). This "definiteness requirement" "mandates clarity,

18  while recognizing that absolute precision is unattainable." *Id.* at 910. Defendant

19  has the burden of proving indefiniteness by clear and convincing evidence. *See*

20  *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017); *Dow*

21  *Chem. Co. v. Nova Chems. Corp.*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

22  Indefiniteness is an issue of claim construction and a question of law. *See DDR*

23  *Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014); *Cordis*

24  *Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009).

25  **III.   THE ASSERTED PATENT**

26        The '394 patent describes and claims a three-ply soft-shell padded helmet.

27  *See, e.g.*, '394 patent, Abstract, Fig. 1a, 1:15-16. Protective helmets have been

28  worn in sports for almost a century and have evolved from sewn leather to helmets

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

2

having hard, stiff, molded plastic outer shells.  *See* '394 patent, 1:29-33; 1:48-51. The '394 patent describes and claims a soft-shell padded helmet that is lightweight and adapted to reduce the risk of head trauma by providing a plurality of pads in a multi-layered configuration.  *See* '394 patent, 1:55-63, Fig. 2.  The soft-shell padded helmets of the '394 patent, due to their multi-layer padded configuration, are adapted to minimize direct impact and absorb more of a direct force than conventional soft padded helmets that are arranged as a single layer.  *See* '394 patent, 4:4-7.

In one of the examples described in the '394 patent, the pads comprise a three-ply configuration of a first layer 40, a second layer 42, and a third layer 44. *See* '394 patent, 4:7-18, Fig. 2.  The layers may have different thicknesses.  *See* '394 patent, 4:18-20, 4:27-34; 4:46-51; Fig. 2.  The second layer 42 is interposed between the first layer 40 and the third layer 44, and has a higher density than one of the first and third layers 40, 44.  *See* '394 patent, 4:15-24; 4:35-51; Fig. 2. Figures 1a and 2 of the '394 patent have been reproduced below, and annotated for the Court's convenience.



FIG. 1a

FIG. 2

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

The padded helmet of the '394 patent has a soft shell 13 formed of breathable, elastic, durable material on the interior and exterior of the helmet. *See* '394 patent, 4:51-55, Fig. 1a, Fig. 2. The soft shell 13 can be formed of a natural material, synthetic material, and/or a combination thereof, such as but not limited to cotton, spandex, Lycra™, and/or any other material known in the art that is light-weight, elastic, and breathable. *See* '394 patent, 4:61-67, Fig. 1a, Fig. 2.

## IV. DISPUTED CLAIM TERMS

### A. Term 1: "padded helmet" (claims 1, 4-7, 10, and 12-15)

| Bella Summit's Construction | Gamebreaker's Construction |
| --- | --- |
| Plain and ordinary meaning – no construction necessary | Head covering with cushion |

The term "padded helmet" should be given its plain and ordinary meaning. "Padded helmet" is a common term, both in the '394 patent and in common parlance, that those skilled in the art and jurors alike are familiar with and readily understand. Nothing in the specification overcomes the heavy presumption that this term carries its plain and ordinary meaning. *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). Gamebreaker offers no explanation for why this Court should change the patentee's chosen language of "helmet" to "head covering" and "padded" to "with cushion," and neither "head covering" nor "cushion" are terms even mentioned in the specification. *See generally*, '394 patent. Accordingly, the Court should reject Gamebreaker's proposed construction and give this term its plain and ordinary meaning.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

54872215-v2

**B.** **Terms 2 and 3**: **"a third layer, wherein said second layer is interposed between said first and second layer, wherein said second layer has a higher density than one of said first or third layer" and "said second layer is interposed between said first and second layer" (claim 1)**

| Bella Summit's Construction | Gamebreaker's Construction |
|---|---|
| a third layer, wherein said second layer is interposed between said first and *third* layer, wherein said second layer has a higher density than one of said first or third layer; | The phrase "said second layer is interposed between said first and second layer" is indefinite. The rest of the term has plain and ordinary meaning. |
| not indefinite; clear and obvious typographical error | Something cannot be interposed between itself and something else. |

"It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim." *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) (citing *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 442 (1926)).  A district court may do so if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id.* (quoting *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003)).

Here, Bella Summit seeks judicial correction that the second layer is interposed between the first and *third* layer, rather than the first and *second* layer as written.  This correction is not subject to reasonable debate, as it simply is not possible for the second layer to be interposed between the first layer and itself. The correction is wholly supported by the surrounding claim language and the specification.

**V E N A B L E  L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

First, the surrounding claim language reads:

> a first layer;
>
> a second layer;
>
> a third layer, wherein said second layer is interposed between said first and second layer, wherein said second layer has a higher density than one of said first or third layer;

'394 patent, 5:8-13 (claim 1).  It is evident from this surrounding language that the second layer should be interposed between the first and ***third*** layer, since it is introduced in the "third layer" wherein clause, and the parallel language regarding the density comparison of the three layers parallels the interposition language and states that the second layer has a higher density than the first or ***third*** layer.  *See, e.g.*, *Interactive Tracking Sys., Inc. v. Artafact LLC*, No. CIV.A. 08-10101-EFH, 2011 WL 2161863, at *3 (D. Mass. June 1, 2011) (judicial correction of "client display" to read "moderator display" where the claim sets forth parallel descriptions of the client and respondent computers and it was "apparent that the term 'client display' is out of place and that the description of the moderator computer should read consistently with the other descriptions.").

Second, correcting this phrase so the second layer is interposed between the first and ***third*** layers is consistent with the patent specification.  The patent specification labels the first layer 40, the second layer 42, and the third layer 44.  *See* '394 patent, 4:15-24, 4:35-41, Fig. 2.  The specification explains that the "FIG. 2 shows the three-ply configuration of the pads wherein the second layer 42 made of denser material is surrounded by the softer and less dense ***first and third layers 40, 44***"—*i.e.*, the second layer is interposed between the first and ***third*** layer.  '394 patent, 4:38-41 (emphasis added), Fig. 2.[1]  Figure 2 (annotated) is

---

[1] Bella Summit acknowledges that the patent specification does repeat the typographical error: "The second layer 42 can be arranged to have a higher density than the first and third layers 40, 44, such that the second layer 42 is interposed

(continued…)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

reproduced below, showing the second layer 42 clearly interposed between the first layer 40 and the third layer 44.



FIG. 2

As noted above, there is no reasonable debate that this is a clear typographical error.  Gamebreaker's own contention that it is impossible for something to be interposed between itself and something else substantiates that the phrase, as written, was a clear error and one skilled in the art would recognize it as such.  Indeed, as discussed above, it is obvious from the face of the patent that "second layer" was improperly typed for the "third layer," and that is the only reasonable construction of that phrase.  *See, e.g., Whittaker Corp. by Technibilt Div. v. UNR Indus., Inc.,* 911 F.2d 709, 712 (Fed. Cir. 1990) ("claims are generally construed so as to sustain their validity, if possible."); *Pavo Sols., LLC v. Kingston Tech. Co., Inc.,* No. SACV141352JLSKES, 2018 WL 5099486, at *2-4 (C.D. Cal. Sept. 10, 2018) (correcting the claim term "case" to read "cover" where the claim as written was nonsensical because it was not possible for the "case" to rotate with respect to the body as claimed, but the "cover" could); *Pulse Eng'g, Inc. v. Mascon, Inc.*, No. 08CV0595JM AJB, 2009 WL 755321, at *9-10 (S.D. Cal.

---

between softer and/or less dense first and second layers 40, 44."  *See* '394 patent, 4:21-24.  But, while the patent specification repeats the error of mistyping "second layer" for "third layer," the patent specification clearly labels the interposed layer 42—*i.e.*, the second layer—and the surrounding layers 40, 44—*i.e.*, the first and third layers.  '394 patent, 4:21-24; *see also* 4:15-18; 4:38-41; Fig. 2.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Mar. 9, 2009) (correcting the word "output" to "input" and "first" to "third" where the errors were obvious based on the overall patent description and the claims as uncorrected would make the device fail).

Finally, there is nothing in the prosecution history that would suggest a different interpretation other than the correction.

Accordingly, for the forgoing reasons, Bella Summit respectfully requests this Court to correct the obvious typographical in claim 1, such that the phrase should read "a third layer, wherein said second layer is interposed between said first and ***third*** layer, wherein said second layer has a higher density than one of said first or third layer."

## C.   Term 4: "soft" (claims 1 and 12)

| Bella Summit's Construction | Gamebreaker's Construction |
|---|---|
| Plain and ordinary meaning – no construction necessary<br><br>not indefinite<br><br>if to be construed, should be considered together with "shell" as "soft shell" | Indefinite meaning. |

The term "soft"—which is used in claims 1 and 12 in conjunction with the term "shell" to recite a "soft shell"—needs no construction and should be given its plain and ordinary meaning.  Gamebreaker asserted in its Invalidity Contentions— and will presumably do so here—that this term is indefinite because "neither the claims nor the patent specification provide any definition of 'soft shell,' or any explanation of how a person of ordinary skill in the art would determine whether or not a shell is 'soft' within the meaning of the claims."  Gamebreaker is wrong, and it will be unable to prove by clear and convincing evidence that the "claims, read

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

in light of the specification delineating the patent, and the prosecution history, fail to inform with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901.

First, the patent specification itself informs, with reasonable certainty, those skilled in the art about the scope of the invention.  The '394 patent is directed to a "soft shell padded helmet," and more particularly to a "three-ply soft shell padded helmet."  *See* '394 patent, 1:15-16.  The three-ply "soft shell" padded helmet of the '394 patent is an advancement to sewn leather helmets, hard/stiff molded plastic helmets, and soft padded helmets arranged as a single layer.  *See* '394 patent, 1:29-33; 1:48-51; 4:4-7.  The helmet of the present invention includes a "soft shell" 13 that is "formed of breathable, elastic, durable material on the interior and exterior of the helmet, which helps make the helmet light-weight and breathable." *See* '394 patent, 1:15-16; 4:51-54; Fig. 1a; Fig. 2.  Moreover, this soft shell 13 "can be formed of a natural material, synthetic material, and/or a combination thereof, such as but not limited to cotton, spandex, Lycra$^{TM}$, and/or any other material known in the art that is light-weight, elastic and breathable."  *See* '394 patent, 4:61-65.  Accordingly, based on these teachings, one skilled in the art would appreciate the scope of the invention as relating to helmets whose shells are "formed of a natural material, synthetic material, and/or a combination thereof, such as but not limited to cotton, spandex, Lycra$^{TM}$, and/or any other material known in the art that is light-weight, elastic and breathable."

Second, the prosecution further informs, with reasonable certainty, those skilled in the art about the scope of the invention.  During prosecution, the applicant distinguished the "soft shell" of the '394 patented helmet from the helmet disclosed in the Marietta prior art reference which "teaches that the outer shell 2 is formed of laminated plastic compositions, which is a rigid material."  *See* McCarthy Declaration, Exhibit A (2016-03-01 Reply to Office Action, at 10).  Similarly, the applicant distinguished the prior art helmet disclosed in the Darnell

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1   prior art reference which taught a "rigid shell." *Id.* Accordingly, based on these

2   additional explanations, one skilled in the art would appreciate that "soft" means

3   "not rigid," and not formed of "laminated plastic compositions."

4       Third, prior art cited during the prosecution of the '394 patent and/or cited

5   by Gamebreaker in its invalidity contentions further demonstrates that "soft" as it

6   relates to "shells" of helmets has a well-understood ordinary meaning to the

7   persons skilled in the art. *See, e.g.*, U.S. Pat. No. 6,360,376, at 1:64-2:5

8   (discussing "soft helmets" that have a "shell of textile fabric," and classifying

9   helmets into "soft" and "hard" helmets); U.S. Pat. No. 6,421,840, at Abstract

10  (identifying a "soft shell" protective head gear); at 1:5-13 and 1:21-24

11  (distinguishing between the "soft shell" protective head gear and "conventional"

12  helmets that have a "hard casing"); Australian Pat. Pub. AU2004202011, at

13  2:10-24 (distinguishing between headgear made from "soft material" and headgear

14  made from "hard material"). Indeed, one skilled in the art would be reasonably

15  informed that "soft shell" helmets are a classification of helmets that are

16  distinguished from "hard shell" helmets.

17      Fourth, whether a helmet contains a "soft shell"—*i.e.*, whether an Accused

18  Product has a "soft shell," or the prior art discloses a "soft shell"— is part of the

19  infringement and invalidity analyses, not part of claim construction. *See, e.g.*,

20  *Thorner*, 669 F.3d at 1368-69 (holding that the district court improperly limited the

21  term "flexible pad" and concluding that "[t]he task of determining the degree of

22  flexibility, the degree of rigidity that amounts to 'semi-rigid,' is part of the

23  infringement analysis, not part of the claim construction).

24      Finally, Gamebreaker's indefiniteness argument is defeated by its very own

25  product pages for its Accused Products that use the term "soft shell" to categorize

26  and market its products. The product page for the "GameBreaker-Pro Headgear"

27  describes it as the "premier ***soft shell*** protective headgear in sports today."

28  *See* McCarthy Declaration, Exhibit B. Similarly, the product page for the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

"GameBreaker Headgear" states that the "GameBreaker *soft shell* helmet is protective headgear utilized across a variety of sports."  *See* McCarthy Declaration, Exhibit C.  If this term was so indefinite that it fails to inform, with reasonable certainty, the scope of what the product is directed to, Gamebreaker would not have chosen this exact language in describing and marketing its own products.

Accordingly, for the foregoing reasons, Gamebreaker has failed to meet its burden by clear and convincing evidence that claims 1 and 12 are indefinite, and the term "soft"/"soft shell" should be construed in accordance with the plain and ordinary meaning given to it by those skilled in the art.

**D.**   **Term 5**: "a … shell covering exterior and interior surfaces" (claim 1) and "a … shell … said … shell covers exterior and interior surfaces" (claim 12)

| Bella Summit's Construction | Gamebreaker's Construction |
|---|---|
| Plain and ordinary meaning – no construction necessary | One external case lying over both the outside and inside surfaces. |

The terms "a … shell covering exterior and interior surfaces" and "a … shell … said … shell covers exterior and interior surfaces" should be given their plain and ordinary meanings.  There is no limitation in the claims themselves or any express disavowal of claim scope in the specification or prosecution history that would exclude certain shell coverings and limit these terms to "one external case lying over both outside and inside surfaces," as Gamebreaker proposes.  Gamebreaker is improperly attempting to limit the claimed invention to one-piece—*i.e.*, one material—shells that wrap around the claimed pads, and attempts to exclude two-piece (or more) shells that are connected together to surround the pads.

Claims 1 and 12 set forth the only requirements for the shell, and neither claim limits the shell to a one-piece shell, or as Gamebreaker calls it, "one external case," that lies over both the outside and inside surfaces.  Neither the claims nor

V E N A B L E   L L P
2049 CENTURY PARK EAST , SUITE 2300
LOS ANGELES , CA  90067
310-229-9900

the specification dictates that the shell takes a "one external case" form, as Gamebreaker proposes.  In fact, the specification expressly states that the "shell can be formed of a natural material, synthetic material, ***and/or a combination thereof*** …" and that the "scope of the invention should not be limited to the versions described herein."  *See* '394 patent, 4:51-67 (emphasis added); Fig. 2.  One skilled in the art would understand from this description that the shell could be made of a combination of materials connected together to form a shell, such as one material covering the first layer 40 and a second material covering the third layer 44, and where the first and second materials are connected together to form a shell around the pads.  Neither the claims, the specification, the figures, or the prosecution history limit the shell 13 to "one external case lying over both the outside and inside surfaces."

Because Gamebreaker's proposed construction is unduly narrow and in direct conflict with the express disclosures of the specification, that construction should be rejected, and these terms should be given their plain and ordinary meanings.

## E.   Term 6: "a seam" (claims 6 and 12)

| Bella Summit's Construction | Gamebreaker's Construction |
|---|---|
| Plain and ordinary meaning – no construction necessary<br><br>not indefinite | Indefinite[2] |

The term "a seam" should be given its plain and ordinary meaning.  "A seam" is a common term, both in the '394 patent and in common parlance, that those skilled in the art and jurors alike are familiar with and readily understand.  Gamebreaker will be unable to prove by clear and convincing evidence that this

---

[2] Gamebreaker did not include this indefiniteness argument in its Invalidity Contentions served on December 20, 2021.  *See* S.P.R. 2.5.4.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1  term renders the claims indefinite, *i.e.*, that this term causes the claims to fail to

2  inform, with reasonable certainty, those skilled in the art about the scope of the

3  invention.

4      The claims themselves define the scope of the seam: "a seam located along

5  an area between said top portion and said side portion in order to couple said top

6  and side portions" (claim 6) and "a seam coupling part of said top portion to said

7  side portion" (claim 12).  *See* '394 patent, 5:37-39 (claim 6), 6:15-16 (claim 12).

8  In other words, the seam is defined by (1) being located between the top portion

9  and the side portion of the helmet; and (2) coupling the top and side portions

10  together.  *See* '394 patent, 5:37-39 (claim 6), 6:15-16 (claim 12).  The specification

11  likewise describes the seam 22 as "extend[ing] along the area between the top

12  portion 12 and the side portion 14 in order to couple the top and side portions

13  12, 14."  *See* '394 patent, 3:26-32; Fig. 1a; *see also* 1:55-2:4; 2:21-28; 3:3-6.  This

14  is in accord with the plain and ordinary meaning of the term "seam," which a

15  person of ordinary skill in the art would understand as simply a joint between two

16  pieces of material used to couple them together.  Figure 1a, reproduced and

17  annotated below, depicts the seam 22 coupling the top portion 12 to the side

18  portion 14:

19

20

21

22

23

24

25

26

27

28



FIG. 1a

Accordingly, for the foregoing reasons, Gamebreaker has failed to meet its burden by clear and convincing evidence that claims 6 and 12 are indefinite, and the term "seam" should be construed in accordance with the plain and ordinary meaning given to it by those skilled in the art.

**F.   Term 7: "heat treated" (claim 13)**

| Bella Summit's Construction | Gamebreaker's Construction |
|---|---|
| Plain and ordinary meaning – no construction necessary<br><br>not indefinite | Indefinite[3] |

---

[3] Gamebreaker did not include this indefiniteness argument in its Invalidity Contentions served on December 20, 2021. *See* S.P.R. 2.5.4.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

The term "heat treated" should be given its plain and ordinary meaning. "Heat treated" is a common term, both in the '394 patent and in common parlance, that those skilled in the art and jurors alike are familiar with and readily understand.  Gamebreaker will be unable to prove by clear and convincing evidence that this term renders the claims indefinite, *i.e.*, that this term causes the claims to fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

Claim 13 defines the scope of "heat treated": "The padded helmet of claim 12, wherein said plurality of layers are heat treated in order to couple said plurality of layers."  *See* '394 patent, 6:31-33 (claim 13).  The specification likewise describes heat treating the layers to couple them together.  *See* '394 patent, 4:4-14 ("…The three layers of padding material are heat treated in order to couple each of the layers of padding material together to form the three-ply configured pads 16."); 4:35-55 ("…In the embodiment of FIG. 2, the pads 16 comprise three layers that are made of ethylene-vinyl acetate (EVA) that are heat treated in order to couple the layers 40, 42, 44 together….").  This is in accord with the plain and ordinary meaning of the term "heat treated," which a person of ordinary skill in the art would understand as simply applying heat to the materials to couple them together.

Accordingly, for the foregoing reasons, Gamebreaker has failed to meet its burden by clear and convincing evidence that claim 13 is indefinite, and the term "heat treated" should be construed in accordance with the plain and ordinary meaning given to it by those skilled in the art.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Bella Summit respectfully requests that the Court (1) correct the obvious typographical error in claim 1 so that "where said second layer is interposed between said first and second layer" reads "where said second layer is interposed between said first and ***third*** layer"; (2) reject Gamebreaker's

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

indefiniteness arguments; and (3) construe the remaining claim terms in accordance with their plain and ordinary meaning.

Dated:  March 21, 2022

VENABLE LLP

By:  */s/ Sean M. McCarthy*

Witt W. Chang
Sean M. McCarthy (*Admitted Pro Hac Vice*)

Attorneys for Plaintiff and Counter-Defendant BELLA SUMMIT LLC; and Third-Party Defendants JEFF DAGAN and KYLE DAGAN

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

16

54872215-v2

PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF